United States District Court

<u>NORTHERN</u> DISTRICT OF <u>TEXAS</u>

U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FILED
JUN 20 2013
CLERK, U.S. DISTRICT COURT
By _____
Deputy

**In the Matter of the Search of**
(Name, address or Brief description of person, property or premises to be searched)

Black digital video recorder, Serial Number 16JM541D-000286, 16 channel capability, one to multiple hard drives, and possible included CD/DVD in the drive, more fully described in Attachment A currently located at the FBI, Dallas Division, 1 Justice Way, Dallas, Texas 75220

**APPLICATION AND AFFIDAVIT
FOR SEARCH WARRANT**

CASE NUMBER: 3:13-MJ-375-BH

I  <u>Robert L. Benton</u>  being duly sworn depose and say:

I am a(n) <u>Special Agent with the Federal Bureau of Investigation (FBI)</u> and have reason to believe that on the person of or **XX** on the property or premises known as (name, description and/or location)

(SEE ATTACHMENT A).

in the <u>NORTHERN</u> District of <u>TEXAS</u> there is now concealed a certain person or property, namely (describe the person or property to be seized)

(SEE ATTACHMENT B).

which is (state one or more bases for search and seizure set forth under Rule 41(b) of the Federal Rules of Criminal Procedure)

property that constitutes evidence of the commission of a crime, contraband, the fruits of crime, and is, otherwise, criminally possessed, **concerning a violation of Title** <u>21</u> **United States code, Section(s)** <u>841(a)(1), 846, 952, 960 & 963 and 18 U.S.C. Sections 1956 and 1957</u>. **The facts to support a finding of Probable Cause are as follows:**

(SEE ATTACHED AFFIDAVIT OF SPECIAL AGENT ROBERT L. BENTON).

**Continued on the attached sheet and made a part hereof.**    XX Yes __ No

_____
Signature of Affiant
ROBERT L. BENTON
Special Agent, FBI

**Sworn to before me, and subscribed in my presence**

<u>June 20, 2013</u>                at        <u>Dallas, Texas</u>
Date                                     City and State

IRMA C. RAMIREZ
<u>United States Magistrate Judge</u>            _____
Name and Title of Judicial Officer            Signature of Judicial Officer

## ATTACHMENT A

The item to be searched ("**TARGET DEVICE**") is a black digital video recorder, approximately 17 inches in length and 13 inches in width, serial number 16JM541D-000286, 16 channel capability, one to multiple hard drives, and possible included CD/DVD in the drive. The **TARGET DEVICE** is currently located at the FBI, Dallas Division, at 1 Justice Way, Dallas, TX 75220.

## ATTACHMENT B

All records on the **TARGET DEVICE** described in Attachment A that are evidence, fruits, or instrumentalities of violations of 21 U.S.C. § 841(a)(1) (possession with intent to distribute and distribution of controlled substances); 21 U.S.C. § 846 (conspiracy to distribute and possess with the intent to distribute controlled substances); 21 U.S.C. §§ 952, 960, and 963 (importation of controlled substances and conspiracy to import controlled substances); and 18 U.S.C. §§ 1956 and 1957 (money laundering) including:

   a. All images of customers, co-conspirators, and related identifying information;

   b. all images of known and unknown subjects coming and going;

   c. all metadata associated with any image or communications identified above, including, but not limited to, dates of specific transactions;

   d. any information related to sources of drugs; and,

   e. any and all video or photographs related to the distribution of illegal narcotics.

2. Evidence of user attribution showing who used or owned the **TARGET DEVICE** at the time the things described in this warrant were created, edited, or deleted, such as logs, saved usernames and passwords, documents, and browsing and or recording history;

As used above, the terms "records" and "information" include all of the foregoing items of evidence in whatever form and by whatever means they may have been created or stored, including any form of computer or electronic storage (such as a hard drive memory, CD/DVD, or any other media that can store data) and any photographic form.

## AFFIDAVIT IN SUPPORT OF AN APPLICATION FOR SEARCH WARRANT

Your Affiant, Robert L. Benton, Special Agent with the Federal Bureau of Investigation (FBI) being duly sworn, depose and state as follows:

### I.   INTRODUCTION

1. I am a Special Agent with the Federal Bureau of Investigation (FBI), United States Department of Justice, assigned to the Dallas Field Division. I have been a Special Agent for approximately eight years and have been assigned to conduct criminal enterprise, violent crime and narcotics investigations for the past two years. During the past two years I have participated in numerous long-term narcotics investigations conducted by the FBI, Dallas in conjunction with the Dallas Police Department (DPD). I have used a variety of methods during these investigations, including, but not limited to, visual surveillance, general questioning of witnesses, the use of search warrants, confidential human sources, undercover agents, pen registers, and Title III wire interceptions. Based on my training and experience in narcotic trafficking cases, I am familiar with the security measures used by the organizations, including the use of surveillance cameras.

2. I am an "investigative or law enforcement officer of the United States" within the meaning of 18 U.S.C. § 2510 (7), that is, I am an officer of the United States who is authorized by law to conduct investigations of and make arrest for offenses enumerated in 18 U.S.C. § 2516.

### II.   PURPOSE OF AFFIDAVIT

3. I make this affidavit in support of an application for a warrant authorizing the search of an electronic device described in Attachment A, which is currently in law enforcement possession, and the seizure of all records and data constituting evidence, fruits, and instrumentalities of drug trafficking as described in Attachment B.

4. The item to be searched ("**TARGET DEVICE**") is a digital video recorder (DVR), with serial number 16JM541D-000286, and any storage media contained therein. The **TARGET DEVICE** is currently located at the FBI, Dallas Division, 1 Justice Way, Dallas, Texas 75220, where it has been stored in a manner in which its contents are, to the extent material to this investigation, in substantially the same state as it was when the **TARGET DEVICE** first came into the possession of the FBI on November 5, 2012. Prior to being seized by the FBI, the **TARGET DEVICE** was utilized at 2736 Seevers Avenue, Dallas, Texas.

5. The applied-for warrant would authorize a search of all records, data, and information stored in the **TARGET DEVICE**, including a forensic examination of the **TARGET DEVICE** for the purpose of identifying and seizing electronically-stored data as described in Attachment B. Based on the information set forth below, I believe that probable cause exists that the **TARGET DEVICE** includes evidence of offenses involving 21 U.S.C. § 841(a)(1) (possession with intent to distribute and distribution of controlled substances); 21 U.S.C. § 846 (conspiracy to distribute and possess with the intent to distribute controlled substances); 21 U.S.C. §§ 952, 960, and 963 (importation of controlled substances and conspiracy to import controlled substances); and 18 U.S.C. §§ 1956 and 1957 (money laundering).

6. As a result of my personal participation in this investigation, reports provided to me by FBI SAs, other federal, state and local investigators, reliable information provided by confidential informants (CIs), cooperating defendants (CDs), physical surveillance, undercover purchases, and my experience and training, I am familiar with all aspects of this investigation. Because this affidavit is submitted for the limited purpose of securing a search warrant, I have not included details of every aspect of the investigation.

### III. FACTS ESTABLISHING PROBABLE CAUSE

#### A. Background of Investigation

7. In approximately March 2011, I, along with other FBI Special Agents (SAs) and Task Force Officers (TFOs) began investigating the Tony Hernandez Drug Trafficking Organization (HDTO). Tony Hernandez was identified as the leader of the HDTO.

8. Numerous investigative techniques have been used during this investigation to include physical surveillance, pen registers, Title III wire intercepts, search warrants, controlled purchases of methamphetamine, and debriefing of CIs and CDs.

9. On November 5, 2012, the FBI and members of the Dallas Police Department arrested ten individuals associated with the HDTO and conducted five search warrants. **TARGET DEVICE** was seized during the execution of a search warrant at 2736 Seevers Avenue, Dallas, Texas on November 5, 2012.

#### B. 2736 Seevers Avenue, Dallas, Texas

10. In April 2012, a FBI Confidential Informant (CI-1) introduced a FBI undercover employee (UCE-4936) to Miguel Quintero at 2736 Seevers Avenue, Dallas, Texas. From May 2012 through August 2012, UCE-4936 purchased multiple ounce-sized quantities of methamphetamine from Miguel Quintero on or near the premises located at 2736 Seevers Avenue, Dallas, Texas or directly in front of Quintero's driveway.

11. On May 14, 2012, UCE-4936 traveled to 2737 Seevers Avenue, Dallas, Texas to purchase 30-inch wheels from Tony Hernandez. Miguel Quintero and others removed five, 30-inch wheels from the shed of 2737 Seevers and rolled them across the street to 2736 Seevers Avenue, Dallas, Texas where they began mounting the wheels and tires on UCE-4936's covert vehicle. Once the wheels and tires were mounted, UCE-4936 asked Quintero if he/she could

inspect one ounce of methamphetamine. Quintero stated that he would obtain one and shortly thereafter, Baltazar Vasquez arrived and provided Quintero with one ounce of methamphetamine. UCE-4936 inspected the methamphetamine, agreed to the quality, and told Quintero that he/she wanted to purchase an additional five ounces. Quintero spoke with Baltazar Vasquez and told UCE-4936 that they would obtain the methamphetamine. Approximately ten minutes later, a juvenile walked from 2737 Seevers and handed Quintero a plastic bag containing the methamphetamine. Quintero then provided the methamphetamine to UCE-4936, who inspected it, agreed to the weight and provided Quintero $5,000 U.S. currency.

12. The methamphetamine seized during the controlled purchase on May 14, 2012 was submitted to the U.S. Department of Justice Drug Enforcement Administration South Central Laboratory in Dallas, Texas for analysis. Results of the examination, contained in lab number 6F10922, showed the narcotics tested positive for Methamphetamine Hydrochloride, with a net weight of 164.3 grams and a purity of 97.4%.

13. On June 14, 2012, UCE-4936 contacted Miguel Quintero on his cellular telephone and negotiated the purchase of six ounces of methamphetamine for the following day. On June 15, 2012, UCE-4936 parked in the street and contacted Quintero to advise him that he/she was outside his residence at 2736 Seevers Avenue, Dallas, Texas. Quintero exited his residence and advised UCE-4936 that he just called his cousin, and he would be there in five minutes. Approximately five minutes later, UCE-4936 observed Baltazar Vasquez walking from the rear of 2736 Seevers and enter the residence. Immediately after Vasquez entered the residence, Quintero exited the residence and entered UCE-4936's covert vehicle. Quintero handed UCE-4936 a zip lock bag containing the methamphetamine. UCE-4936 inspected the contents, agreed to the weight, and paid Quintero the previously negotiated amount of $5,300 U.S. currency.

14. The methamphetamine seized during the controlled purchase on June 15, 2012 was submitted to the U.S. Department of Justice Drug Enforcement Administration South Central Laboratory in Dallas, Texas for analysis. Results of the examination, contained in lab number 6F10999, showed the narcotics tested positive for Methamphetamine Hydrochloride, with a net weight of 166.9 grams and a purity of 100.0%.

15. On July 29, 2012, UCE-4936 contacted Miguel Quintero and negotiated the purchase of six ounce of methamphetamine for the following day. On July 30, 2012, UCE-4936 contacted Quintero and advised that he/she was close to his residence. When UCE-4936 arrived at Quintero's residence, Quintero exited his residence of 2736 Seevers Avenue, Dallas, Texas, entered the UCE's covert vehicle and handed UCE-4936 approximately six ounces of methamphetamine. UCE-4936 then requested an additional two ounces of methamphetamine. Quintero exited UCE-4936's vehicle and immediately placed a phone call to Roberto Vasquez (which was recorded pursuant to a court authorized Title III) and asked, "Where you at?" to which Vasquez relpied, "In the house." Quintero told Vasquez to open the door. At that time, UCE-4936 believed Vasquez was inside 2742 Seevers Avenue, Dallas, Texas. A few moments later, Quintero exited his residence at 2736 Seevers Avenue, Dallas, Texas and delivered UCE-4936 the additional two ounces of methamphetamine.

16. The methamphetamine seized during the controlled purchase on July 30, 2012 was submitted to the U.S. Department of Justice Drug Enforcement Administration South Central Laboratory in Dallas, Texas for analysis. Results of the examination, contained in lab number 6F11009, showed the narcotics tested positive for Methamphetamine Hydrochloride, with a net weight of 222.2 grams and a purity of 100.0%.

17. On August 7, 2012, UCE-4936 arranged for the purchase of twelve (12) ounces of methamphetamine from Miguel Quintero. When UCE-4936 arrived at Quintero's residence, 2736 Seevers, Dallas, Texas, an unidentified male known believed to be "Flaco" moved a trash can and directed UCE-4936 to pull into the driveway of the residence. Flaco then sat down in a chair, where UCE-4936 observed what appeared to be the handle of a pistol protruding from his right jeans pocket. After UCE-4936 parked in the driveway, Quintero and Agne Vasquez exited the residence, where Quintero entered UCE 4936's vehicle to complete the narcotics transaction. UCE-4936 believes that Flaco and Vasquez provided counter-surveillance and security during the transaction. Following the transaction, Quintero exited UCE-4936's vehicle and entered his residence with Vasquez.

18. The methamphetamine seized during the controlled purchase on August 7, 2012, was submitted to the U.S. Department of Justice Drug Enforcement Administration South Central Laboratory in Dallas, Texas for analysis. Results of the examination, contained in lab number 6F11010, showed the narcotics tested positive for Methamphetamine Hydrochloride, with a net weight of 336.3 grams and a purity of 98.2%.

## C. TARGET DEVICE

19. As mentioned above, the FBI and members of the Dallas Police Department executed a search warrant at 2736 Seevers Avenue, Dallas, Texas on November 5, 2012. At that location, law enforcement observed several surveillances cameras, including one of which may have recorded one of the transactions with the UCE. During the execution of the search warrant, agents seized a DVR (**TARGET DEVICE**), that was connected to a monitor, which agents believe was used as part of a home security system with surveillance cameras. At the time of the

search, the monitor connected to the **TARGET DEVICE** was on, however, no surveillance camera views were displayed.

### IV.  ELECTRONIC STORAGE AND FORENSIC ANALYSIS

20.  Based on my knowledge, training, and experience, I know that electronic devices can store information for long periods of time. This information can oftentimes be recovered with forensics tools.

21.  *Forensic evidence.* As further described in Attachment B, this application seeks permission to search for all files, records, data, and information that might serve as evidence of the crimes described on the warrant, but also for evidence that establishes how the **TARGETED DEVICE** was used, the purpose of its use, who used it, and when. There is probable cause to believe that this forensic electronic evidence might be on the **TARGETED DEVICE** because:

   a. Data on the storage medium can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file).

   b. Forensic evidence on **TARGET DEVICE** can also indicate who has used or controlled the device. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.

   c. A person with appropriate familiarity with how an electronic device works may, after examining this forensic evidence in its proper context, be able to draw conclusions about how electronic devices were used, the purpose of their use, who used them, and when.

   d. The process of identifying the exact electronically stored information on a storage medium that are necessary to draw an accurate conclusion is a dynamic process.

       Electronic evidence is not always data that can be merely reviewed by a review team and passed along to investigators. Whether data stored on a computer is evidence may depend on other information stored on the computer and the application of knowledge about how a computer behaves. Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

   e. Further, in finding evidence of how a device was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium.

22. *Nature of examination.* Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant I am applying for would permit the examination of the device consistent with the warrant. The examination may require authorities to employ techniques, including but not limited to computer-assisted scans of the entire medium, that might expose many parts of the device to human inspection in order to determine whether it is evidence described by the warrant.

## CONCLUSION

23. I submit that this affidavit supports probable cause for a search warrant authorizing the examination of the **TARGET DEVICE** described in Attachment A to seek the items described in Attachment B.

Respectfully submitted,

Robert L. Benton
Special Agent, FBI

Subscribed and sworn to before me on June ___20___, 2013:

*[signature]*
IRMA C. RAMIREZ
UNITED STATES MAGISTRATE JUDGE
NORTHERN DISTRICT OF TEXAS